COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-273-CR

 

 

WILLIE
CHARLES BOYNTON                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

A jury convicted Appellant Willie Charles Boynton
of two counts of aggravated robbery with a deadly weapon and assessed his
punishment at twenty years= confinement
for each count.  In a single point,
Boynton argues that the evidence is factually insufficient to support his
conviction.  We will affirm.








At approximately 10:30 p.m. on September 17,
2006, a male entered a convenience store in White Settlement, pointed a gun at
two store clerks, and demanded money. 
The perpetrator was black, Hispanic, or black and Hispanic; he stood
about six feet tall, had a small, athletic build, and was between the ages of
eighteen and twenty-five; he wore jean shorts, black gloves, a white and black
bandana over part of his face, and a black or gray hoodie with the hood over
his head; he carried a green backpack; and his gun was wrapped in a bandana
that matched the bandana partially covering his face.  The store clerks complied with the
perpetrator=s demand and gave him the store=s money,
and he left the store.  One of the clerks
later identified Boynton both in a photographic spread and at trial as the
person responsible for committing the aggravated robbery.








Boynton argues that the evidence is factually
insufficient to support his conviction because there was Aconflicting
and inconsistent@ testimony regarding his
identity as the person responsible for committing the aggravated robbery.  When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704B 05
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.

We may not substitute our judgment for the
factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.








In a criminal trial, the State must prove that
the accused was the perpetrator, and the accused stands innocent before the
court until his identity is established beyond a reasonable doubt.  Rice v. State, 801 S.W.2d 16, 17 (Tex.
App.CFort
Worth 1990, pet. ref=d).  Identity can be established by direct or
circumstantial evidence or by inferences. 
Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); Roberson
v. State, 16 S.W.3d 156, 167 (Tex. App.CAustin
2000, pet. ref=d).

The evidence showed that Darlene Archer was one
of the convenience store clerks working on the night of the robbery.  Archer testified that she thought the
perpetrator looked like a young black man who was a little taller than her and
probably not Aold enough to buy beer.@  She was able to observe the portion of his
face above the bandana:  his nose area,
his eyes, and a part of his forehead. 
Archer met with a detective after the robbery and viewed a photographic
spread that contained Boynton=s
photo.  Boynton=s photo
was included in the spread because a detective with the Saginaw Police
Department had identified Boynton as a possible suspect in the case.  Archer Aimmediately@ identified
Boynton as the person responsible for committing the aggravated robbery.  Archer also identified Boynton at trial as
the person responsible for committing the aggravated robbery.








Joshua Bayle testified that he worked at a Subway
in September 2006.  On September 16 at
around 10:00 p.m., approximately twenty-four hours before the convenience store
robbery, a man between the ages of eighteen and twenty-five entered the Subway
carrying a green backpack and wearing a gray hoodie and a white and black
bandana over his mouth.  The store=s
security cameras captured images of the person. 
The Saginaw Police Department requested a copy of the footage.








Trivell Lewis testified that his brother attended
high school with Boynton, that Boynton was a friend of his family, and that
Boynton lived with his family for a period of time in 2006.  Lewis had worked at the same Subway where
Bayle worked.  On September 14, 2006,
Lewis took Boynton to the Subway to fill out an employment application.  Lewis was later called to the Subway to view
the images of the person who entered the store on September 16, and he
concluded that the person in the images resembled Boynton; Lewis recognized the
hoodie, he opined that the shorts worn by the person used to be his, and he
last saw Boynton wearing black, high-top shoes similar to those worn by the
person in the images.  Lewis thereafter
had a conversation with Boynton about the situation at the Subway.  Lewis testified that he became one hundred
percent sure at that point that the person in the images was Boynton because
Boynton asked about the bandana used by the person, but Lewis had not said
anything to Boynton about the person wearing a bandana.

Margaret Garcia was the other convenience store
clerk working the night of the robbery. 
She described the perpetrator as a black or black and Hispanic male who
had a small, athletic build and was between the ages of eighteen to twenty-five.  She observed the bridge of his nose to the
middle of his forehead during the robbery, but she was unable to identify the
perpetrator when she viewed a photographic spread.  At trial, she was shown an image taken of the
person at the Subway, and she opined that the person in the image was
ninety-nine percent identical to the person who committed the robbery at the
convenience store.  The State questioned
Garcia if she saw anyone in the courtroom who had features similar to the
person who committed the aggravated robbery at the convenience store, and she
identified Boynton because she recognized the shape of his eyes and his build.








Defense counsel attempted to cast doubt on
Boynton=s
identity as the person responsible for committing the robbery by stressing that
the police report identified the perpetrator as a light skinned black male or a
Hispanic male.  Defense counsel
also elicited testimony from a witness who observed the perpetrator running
from the convenience store and described the person as AHispanic
looking.@  Archer, however, testified that she never
described the perpetrator as Hispanic, and Garcia confirmed that she had
described the perpetrator as black or black and Hispanic, not
Hispanic.  The witness who described the
perpetrator as AHispanic looking@
confirmed that he had assumed the perpetrator was Hispanic because he had seen
a lot of other people in his neighborhood wearing attire similar to what the
perpetrator wore and because of a bias he harbored as a result of his vehicle
being vandalized.  The detective who
showed Archer and Garcia the photographic spread testified that in his
experience as a detective, witnesses can give varying descriptions of other
people.

Defense counsel also pointed out that Archer was
hysterical and upset when the robbery occurred and when she viewed the
photographic spread, but Archer testified that she was Aa
thousand-and-one percent sure@ that
Boynton committed the aggravated robbery, and the detective opined that he
thought Archer was a good witness because she immediately recognized Boynton as
the person responsible for committing the robbery.








As the judge of the weight and credibility of the
evidence, the jury could have given more weight to the direct and
circumstantial evidence demonstrating that Boynton committed the robbery than
it gave to any contradictory evidence; the mere existence of contradictory
evidence is not enough to support a finding of factual insufficiency.  See Goodman v. State, 66 S.W.3d 283,
287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 8B9, 12.

Viewing all the evidence in a neutral light,
favoring neither party, the evidence supporting the conviction is not so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust nor does the conflicting evidence so greatly outweigh the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  We hold that the evidence is
factually sufficient to support Boynton=s
conviction for both counts of aggravated robbery with a deadly weapon.  We overrule Boynton=s sole
point and affirm the trial court=s
judgments.

PER
CURIAM

 

PANEL:  MEIER, DAUPHINOT, and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 1, 2009











[1]See Tex. R. App. P. 47.4.